## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

RANDAL S. BRAGG, et al.,

      Plaintiffs,

                             Case No.:     8:02-CV-609-T-30EAJ

vs.

BILL HEARD CHEVROLET, INC.-PLANT
CITY,

      Defendant.

_____/

### FINAL ORDER APPROVING
### SETTLEMENT AGREEMENT, CERTIFING CLASS,  AND
### AWARDING ATTORNEYS FEES AND COSTS

      This cause came before the Court on the parties' joint motion for class certification and approval of settlement agreement.  The Court conducted a fairness hearing on June 16, 2006.

### Procedural Background

      The Named Plaintiffs have filed the above-captioned litigation alleging that Bill Heard Chevrolet engaged in a variety of practices that violate the Truth in Lending Act, the Florida Motor Vehicle Financing Act, and the Florida Deceptive and Unfair Trade Practices Act.  Bill Heard Chevrolet has vigorously denied all liability in the Litigation.  After several years of hard-fought litigation, the parties entered into a settlement agreement to resolve this matter on a classwide basis on November 22, 2005, [Dkt. # 120-2].

      The parties thereupon filed their Joint Motion for Preliminary Approval of Settlement Agreement.  The Court granted that Motion on December 9, 2005, [Dkt. # 125].

      Pursuant to the Settlement Agreement and Preliminary Approval Order, the parties agreed to retain an independent third-party class action administrator ("the Class Administrator")

to perform a review of all Defendant's files for the relevant portion of time to implement the Settlement Agreement, to determine to whom notice should be sent, and to send that notice to the class members. As a result, the Class Administrator compiled the class list from a file review at the Defendant's dealership and from electronic files provided by counsel for the Defendant.[1] Following the Class Administrator's review, a total of eight thousand three hundred and seventy-seven (8,377) prospective class members were identified.

Given the complexities of the class definition as contained in the Complaint, the parties divided the Class Members into four (4) groups, which are defined as follows:

**Group 1** consisted of each person who signed a retail installment sales contract (RISC), whether funded or unfunded, during the class period, which included the cost of vehicle theft registration (VTR) and/or silencer alarm protection (SAP), in the amount financed. Each person within this Group was eligible to receive his/her pro rata share of a common fund totaling $75,000.

**Group 2** consisted of all persons who paid for VTR and/or SAP during the class period. Group 2 claimants who purchased VTR were eligible to receive $200. Group 2 claimants who purchased SAP were eligible to receive $100.

**Group 3** consisted of all persons who purchased a vehicle from Bill Heard during the class period. Each Group 3 claimant was eligible to receive a payment of $10.

**Group 4** consisted of all persons who attempted to purchase a vehicle from Bill Heard Chevrolet during the class period and signed a RISC to obtain financing, but the RISC was not ultimately funded by a finance company and after which the person failed to receive his/her down payment and/or return of his/her trade-in vehicle, if applicable. For each such person Bill Heard Chevrolet agreed to make a full refund of the person's down-payment and/or the retail dollar value of their trade-in as determined by Kelly Bluebook at the time of the trade-in.

---

[1] The relevant class period of time is August 1, 2000 through October 31, 2002.

The Settlement Agreement provides for payment to the Class Members in Group 1 of the aggregate amount of $75,000, an amount which reflects the statutory damages the Class Members could have received on the TILA claim.

The Settlement Agreement further provides for full payment to Class Members in Group 2 for the price they were charged for VTR products. Prospective members of Group 2 who purchased SAP will receive payment in the amount of $100.00 each. Even though the price of the Back-End Products may have been disclosed on their Retail Installment Sales Contract or Lease, Plaintiffs alleged that conflicting or confusing information appears elsewhere in their vehicle transaction documents.

Further, members of Group 3 will receive $10.00 each for Bill Heard Chevrolet's alleged failure to use the appropriate disclosure language on its sale forms with reference to a dealer service fee. The Settlement Agreement further provides for substantial non-monetary relief, including changes in Bill Heard Chevrolet's documentation used in the sale and financing of automobiles.

### Class Members' Claims

The Class Administrator was able to directly mail the notice to 8,377 of the prospective class members, with only 1,620 notices being returned and re-mailed to new addresses. Of the 8,377 notices sent out to Group 1 claimants, 1,821 made claims. As noted, payment to Group 1 claimants will be a pro rata share of $75,000. Of the 2,693 notices sent out to Group 2 claimants, 808 made claims. Payment to Group 2 members will be $153,200. Of the 7,996 notices sent out to Group 3 claimants, 1,788 made claims. Payment to Group 3 members will be $17,880. The total payment to be made to Groups 1-3 claimants will be $246,080.

In addition, 94 Group 4 claimants made claims. After a review of those claims, however, only four of those claims were determined to be valid.[2] The Court awards Group 4 payments to the following class members in the following amounts:

    Murdock - $1,200.
    Stebbins - $1,000.
    Campbell - $1,500.
    Lane - $4,000.

The total Group 4 payment amount will be $7,700.

The grand total amount of settlement payments made to all class members in all groups will be $253,780. The Court hereby orders Bill Heard Chevrolet to pay this amount to class members in accordance with the terms of the settlement agreement.

### Fairness of the Settlement

The Court finds that the settlement is fair, adequate and reasonable. It satisfies the Eleventh Circuit's standard of being "fair, reasonable and adequate" and not the product of collusion between the parties. See Strube v. American Equity Investment Life Ins. Co., 158 Fed. Appx. 198, 2005 WL 3160265 (11th Cir. Nov. 29, 2005) (citing Piambino v. Bailey, 757 F.2d 1112 (11th Cir. 1985); Diaz v. Hillsborough County Hosp. Auth., 2000 WL 1682918 (M.D. Fla. Aug. 7, 2000).

The Court must examine the following factors in determining whether to approve a settlement of a class action:

---

[2] The parties have informed the Court that an additional seven Group 4 claims (Salmon, Farkas, Randolph, Spear, Parker, Hodges, and Acosta-Romero) are still under review because Bill Heard Chevrolet's records do not indicate a basis for a Group 4 claim and the parties have requested additional supporting information from those claimants. If that additional information is forthcoming, the parties are instructed to again review those claims pursuant to the terms of the settlement agreement. If agreement is reached as to the validity and amount of those claims, upon motion of the parties, the Court will issue a supplemental order regarding payment of those claims. If no agreement is reached, pursuant to the terms of the settlement agreement, those parties will be permitted to opt out of the settlement. The Court reserves jurisdiction to address those claims should it become necessary to do so.

1. the terms of the settlement compared to the likely rewards the class would have received following a successful trial of the case;
2. the complexity, expense, and duration of the litigation;
3. the judgment of experienced counsel for the parties;
4. the stage of the proceeding at which the settlement was achieved; and
5. the substance and amount of opposition to the settlement.

Cotton v. Hinton, 559 F.2d 1326, 1330-32 (5th Cir. 1977); Diaz, 2000 WL 1682918 * 2.  In addition, the Court is to consider the general policy that "[p]articularly in class action suits, there is an overriding public interest in favor of settlement." Cotton, 559 F.2d at 1331.

**Likelihood of success at trial compared to the settlement agreement.**  There would be substantial risks and uncertainties for all parties if the case were to go to trial.  Bill Heard Chevrolet would have vigorously defended the action, and the class members faced a very real risk of not prevailing at all with regard to the merits.  In contrast, under the settlement, the claimants will receive meaningful monetary awards.  In addition, they already have benefited from the changes in its forms and business practices that Bill Heard Chevrolet has implemented. The settlement pays claiming class members 100 percent of their purported TILA damages.  It pays claiming class members who purchased VTR 100 percent of their purchase price back.  It pays claiming class members who purchased SAP 25 percent of their purchase price back – even though those class members received a clear benefit from the product – an actual alarm placed on the vehicle.  It also pays claiming class members money on the dealer services fee claim – a claim on which the class may very well have not been able to obtain classwide relief upon.

**Complexity, expense and duration of litigation.**  The litigation in this case was complex.  For all parties concerned, settlement is a desirable alternative.

**Judgment of counsel.**  The former Fifth Circuit in Cotton stated that, in the "absen[ce] of fraud, collusion or the like," the court is "entitled to rely upon the judgment of experienced counsel for the parties" and "should be hesitant to substitute its own judgment for that of

counsel." 559 F.2d at 1330. The judgment of experienced counsel for both parties is that the settlement should be approved. The opinions of counsel support the Court's finding that the settlement is fair and reasonable.

**Stage of the proceeding.** The proceedings to date provide an adequate basis for an informed settlement. The litigation between the parties stretched over five (5) years, with the case being stayed while the Plaintiffs appealed this Court's Order dismissing their TILA claim in January, 2003. Upon return of the mandate from the Eleventh Circuit, after the U.S. Supreme Court denied review, litigation continued in 2005, at which time the parties arrived at the class settlement. There were a number of documents exchanged, several depositions, an appeal, and multiple mediations. By approving the settlement, the parties and the Court will be spared the massive amount of work yet to be done to resolve the litigation – including the litigation of class certification and the merits of the dispute.

**Lack of opposition.**   The Court preliminarily approved the settlement and no intervening events have occurred that would cause the Court to reconsider that preliminary approval. No class members elected to opt out of the settlement. There were no objectors. The former Fifth Circuit in In re Beef Indus. Antitrust Litig., 607 F.2d 167, 180 (5th Cir. 1979) stated that the lack of objections to a settlement is "a strong indication that the settlement is fair."

**Other factors – arms length negotiations.** The settlement is the result of lengthy, hard-fought adversarial, arms-length negotiations. The parties settled only after engaging in vigorous and comprehensive litigation, which was hotly contested, as well as vigorous negotiations. The Court finds that the settlement was negotiated without collusion.

**The Notice Procedures Exceeded the Requirements of Due Process and Rule 23**

Rule 23(c)(2) requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Constitutional due process requirements establish, at a minimum, that individual notice be provided to class members, such as by first class mail to their last known addresses. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950); In re Nissan Motor Corp. Antitrust Litig., 552 F.2d 1088 (5th Cir. 1977). The content of the notice must adequately inform class members of the right to opt out of the settlement and the result of foregoing this right. Penson v. Terminal Transport Co., 634 F.2d 989, 993 (5th Cir. 1981); Diaz, 2000 WL 1682918 * 6.

The Court finds that the notice that the Court preliminarily approved and the class administrator sent out was fair.  It described the nature of the litigation and the classes in simple-to-understand language.  It set up an extremely easy process for class members to make claims. The notice procedures implemented in this case more than adequately satisfy Rule 23 and due process standards.

As further evidence of the fairness of the Settlement Agreement, out of the 8,377 prospective class members identified, no prospective class members chose to exclude themselves from the Settlement Agreement and there were no objections to the Settlement Agreement.

## Class Certification

The Court concludes that the requirements of Rule 23 have been satisfied for the reasons set forth in the Preliminary Approval Order, which the Court adopts by reference.

## Class Representative Fee

The Settlement Agreement also has a provision for a class representative fee for their time and effort in this case, as follows:  Randall S. Bragg ($7,500.00) individually; Andre Reichert ($7,500.00) individually; Christopher Nichols and Bond Nichols ($7,500) collectively;

Nonie Stebbins and Donald Stebbins ($7,500.00) collectively.   The Court approves payment of the class representative fee to these Named Plaintiffs.

### Attorneys' Fees and Costs

The Settlement Agreement also provides for recovery of attorney's fees and costs to be awarded by the Court. The Class Settlement was bifurcated to address and finalize the terms of the Class recovery, prior to negotiating and resolving fees and costs.  Plaintiffs have filed an Unopposed Motion to Approve Attorney's Fees and Costs in conjunction with this Motion, [Dkt. # 131], along with a Supplemental Brief, [Dkt. # 135], affidavits of all of Plaintiffs' counsel, [Dkt. # 131, Exhs. 1-6], and an expert affidavit as to the reasonableness of their fees, [Dkt. # 134].  Plaintiffs seek approval of an award of $650,000 in attorney's fees and $60,000 in costs.[3]

The Court has considered the submissions and the reasonableness of the fees and costs requested in light of the factors set forth in Hensley v. Eckerhart, 461 U.S. 424, 434 (1983), Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), and the other federal cases cited in Plaintiff's Motion and Supplemental Brief.   Several of the class claims are governed by state law;  the Florida courts have adopted the same basic factors as in Hensley for resolution of attorneys' fee awards. Florida Patient's Compensation Fund v. Rowe, 472 So. 2d 1145, 1151 (Fla. 1985); Bell v. U.S.B. Acquisition Co., 734 So. 2d 403, 406-07 (Fla. 1999).

After careful consideration and review of Plaintiffs' motion and supporting materials, as well as the relevant legal authorities and governing framework, the Court approves an award of attorneys' fees to Plaintiffs' Counsel in the amount of $650,000.00 and an award of costs to Plaintiffs' Counsel in the amount of $60,000.00

---

[3] The Settlement Agreement provides that Bill Heard Chevrolet will not oppose an application for attorneys' fees that do not exceed $650,000, as well as an application for reasonable, documented costs that do not exceed $60,000.  Pursuant to the Settlement Agreement, in no event shall Bill Heard Chevrolet be liable for attorney's fees or costs exceeding those amounts.

## Conclusion

A careful and thorough analysis reveals that all relevant factors strongly favor approval of the settlement which was the product of arms' length negotiations of the parties. Class members received the best practicable notice of the settlement. No objections or opt-outs were filed. Accordingly, the Court finds the settlement is a fair, adequate and reasonable settlement of this matter. The Court therefore ORDERS the class action certified and the proposed settlement approved. All class members' claims against Bill Heard Chevrolet are dismissed with prejudice, subject to the terms of the settlement agreement.

Dated: _28 Aug. 2006_

_____

United States District Judge